UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY                                : Docket No.:
                                                 :
                        Plaintiff,               :
                                                 : **COMPLAINT**
    -against-                                    :
                                                 :
                                                 :
THE ESPINOSA GROUP, INC.                         :
                                                 :
                        Defendant.               :
                                                 :
-----------------------------------------------------------------X

Plaintiff, American Empire Surplus Lines Insurance Company ("American Empire"), by its attorneys, L'Abbate, Balkan, Colavita & Contini, L.L.P., as and for its Complaint against the defendant, The Espinosa Group, Inc. ("Espinosa"), alleges, upon information and belief, as follows:

## PARTIES

1. Plaintiff, American Empire is an insurance company organized and existing under the laws of the State of Delaware, with its principle place of business in Ohio.

2. Upon information and belief, and at all times relevant, defendant, Espinosa, was and still is a corporation organized and existing under the laws of the State of New Jersey, with its principle place of business in Queens County.

## JURISDICTION

3. This action is brought pursuant to 28 U.S.C. § 1332, 2201, and 2202 based on the diversity of citizenship of the parties, on common law, and seeks declaratory relief.

4. The amount in controversy in this action exceeds the sum or value of $75,000.

5. Venue is proper pursuant to 28 U.S.C. § 1391 as, upon information and belief, Espinosa is a resident of Queens County, New York, and a substantial part of the events giving rise to the claim occurred in Queens County.

## FACTS

**The American Empire Policies**

6. American Empire issued a Commercial General Liability insurance policy to Espinosa, bearing Policy No. 14CG0189795, for the period of December 19, 2014 to December 19, 2015 (the "Primary Policy").

7. The premium charged for the Primary Policy was to be computed as a percentage of the gross receipts of Espinosa during the policy period.

8. Based upon an estimate of Espinosa's gross receipts for the policy period, American Empire assigned an Advance Premium to the Primary Policy in the amount of $265,000. However, the Advance Premium was subject to adjustment if an audit by American Empire revealed that the gross receipts exceeded the initial estimate of the same.

9. In this regard, the Primary Policy provides, in pertinent part:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * *

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

* * *

10. The Primary Policy also contains an endorsement entitled: "Explanatory Policy Premium Endorsement", which provides, in pertinent part:

The policy conditions relating to premiums shall be amended to incorporate the following:

1. It is understood and agreed that [the Primary Policy] is subject to a minimum policy premium as stated in the Declarations. If the policy remains in force until the expiration date of the policy, this minimum policy premium shall apply unless the audit condition of this policy develops a greater premium. In no event shall the premium be less than the minimum policy premium should the policy remain effective the complete policy term.

* * *

11. By way of the Common Policy Conditions, Espinosa "[i]s responsible for the payment of all premiums…."

12. The Common Policy Conditions further provide:

> **C. EXAMINATION OF YOUR BOOKS AND RECORDS**
>
> We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.
>
> \* \* \*

13. American Empire also issued an Excess Liability insurance policy to Espinosa, bearing Policy No. 14CX0189796, for the same period (the "Excess Policy").

14. Similar in fashion to the Primary Policy, the Advance Premium for the Excess Policy was to be computed as a percentage of gross receipts for Espinosa and an Advance Premium of $89,400 was assigned based upon an estimate of Espinosa's gross receipts for the coverage period.

15. Again, the Advance Premium was subject to adjustment if an audit by American Empire revealed that the gross receipts exceeded the initial estimate.

16. To that end, the Excess Policy provides, in pertinent part:

> **2. CONDITIONS**
>
> \* \* \*
>
> **B.** We will compute all premiums for this policy in accordance with our rules and rates.
>
> \* \* \*
>
> If this policy is subject to audit adjustment, the earned premium shall be computed in accordance with the rates and rating basis

stated in the Declarations upon the expiration or cancellation of this policy. If the earned premium is more than the ADVANCE PREMIUM shown in the Declarations, you shall promptly pay the excess amount to [American Empire]...The first named insured must keep records of the information that [American Empire] need[s] for the earned premium computation, and send [American Empire] copies of those records at such times as [American Empire] may request. Any additional audit premium is due and payable immediately upon notice of such additional premium to the first named insured.

\* \* \*

**G.** Any conditions relating to premiums in the Underlying Insurance and in this policy shall be amended to incorporate the following:

1. This policy is subject to a MINIMUM POLICY PREMIUM as stated in the Declarations. If the policy remains in force until the expiration date of the policy, this MINIMUM POLICY PREMIUM shall apply unless the premium audit condition (CONDITION B) of this policy develops a greater premium. In no event shall the premium be less than the MINIMUM POLICY PREMIUM should the policy remain effective the complete policy term.

2. It is further agreed should this policy be cancelled prior to its expiration date the premium payable to us shall be no less than:

    a. The MINIMUM EARNED PREMIUM set forth in the Declarations; or if greater,

    b. The actual pro rata earned premium, if cancelled by us, or,

    c. The actual short rate earned premium, if cancelled by the first named insured.

3. The actual pro rata earned premium shall be the greater of:

    a. The premium determined by applying pro rata factors to the MINIMUM POLICY PREMIUM; or

          b.     The audit premium for the term the policy was effective.

4.     The actual short rate earned premium shall be the greater of:

          a.     The premium determined by applying short rate factors to the MINIMUM POLICY PREMIUM; or

          b.     The audit premium for the term the policy was effective increased by a factor of ten percent as the short rate cancellation penalty.

This CONDITION prevails over any conflicting provisions in the Underlying Insurance or in this policy.

**The Premium Audit**

17.     On February 2, 2016, Overland Solutions, Inc., on behalf of American Empire, performed an audit of the financial records of Espinosa to determine its actual gross receipts during the policy period.

18.     Pursuant to the audit, the additional premium owed under the Primary Policy was calculated to be $61,806, which is reflected in Endorsement No. 1 to the policy, dated February 12, 2016. The additional premium owed under the Excess Policy was calculated to be $20,851, which is reflected in Endorsement No. 1 to that policy, dated February 24, 2016.

19.     Inclusive of the New York Surplus Lines Tax of 3.6% and the Stamping Fee of .2%, American Empire is due $85,798 under the Primary Policy and Excess Policies.

**AS AND FOR A FIRST CAUSE OF ACTION**

20.     American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

21. As noted above, the additional premium under the Primary Policy is reflected in Endorsement No. 1, dated February 12, 2016. The additional premium owed to American Empire under the Excess Policy is reflected in Endorsement No. 1, dated February 24, 2016.

22. Via a letter dated June 29, 2016, the undersigned, on behalf of American Empire, demanded payment from Espinosa in the amount of $85,798, representing the additional premium for the Primary and Excess Policies, the applicable taxes, and the stamping fee.

23. To date, however, American Empire has not received payment in the amount owed.

24. As a result of Espinosa's refusal to pay the additional premium and applicable taxes and fees owed, American Empire has been damaged in the amount of $85,798, together with interest, costs, disbursements and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION

25. American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

26. Espinosa's failure to pay the additional premium due under the Primary and Excess Policies violates the terms and conditions of the policies.

27. As such, American Empire respectfully requests that the Court declare that American Empire has no obligation to defend and/or indemnify Espinosa, or any other person or entity seeking coverage under the American Empire Policies, relative to any occurrence, offense, claim or suit which has or may be reported to American Empire under the Primary and Excess Policies.

## AS AND FOR A THIRD CAUSE OF ACTION

28.     American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

29.     Espinosa's failure to pay the additional premium due and owing under the Primary and Excess Policies constitutes a breach of Espinosa's duty of good faith and fair dealing owed to American Empire with respect to the Primary Policy and the Excess Policy.

30.     As a result of Espinosa's breach of its duty of good faith and fair dealing, American Empire has no obligation to provide coverage to Espinosa, or any other person or entity seeking coverage under the American Empire Policies, relative to any occurrence, offense, claim or suit which has or may be reported to American Empire under the Primary and Excess Policies.

**WHEREFORE**, American Empire respectfully requests that:

(a) The Court enter judgment against Espinosa in the sum of $85,798, plus interest, for the additional premium due and owing under the Primary Policy and the Excess Policy;

(b) The Court enter judgment declaring that American Empire has no obligation to defend and/or indemnify Espinosa, or any other person or entity seeking coverage under the Primary and Excess Policies, relative to any occurrence, offense, claim or suit which has or may be reported to American Empire based upon Espinosa's failure to comply with its obligations under the American Empire policies;

(c) The Court enter judgment declaring that American Empire has no obligation to defend and/or indemnify Espinosa, or any other person or entity seeking coverage under the Primary and Excess Policies, relative to any occurrence, offense, claim or suit which has or may be reported to American Empire based upon Espinosa's breach of its duty of good faith and fair dealing;

(d) That American Empire be awarded the costs and disbursements of this action; and

(e) That American Empire shall have such other, further and different relief as this Court may deem just and proper.

Dated: Garden City, New York
August 12, 2016

L'ABBATE, BALKAN, COLAVITA
& CONTINI, L.L.P.

By: *Kaitlyn L. Lavaroni*
RICHARD P. BYRNE
KAITLYN L. LAVARONI
Attorneys for Plaintiff
American Empire Surplus Lines
 Insurance Company
1001 Franklin Avenue
Garden City, NY 11530
T:(516) 294-8844
F:(516) 294-8202
File No. 422-99522